IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 11-cv-02557-CMA-CBS

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

    Plaintiff,

v.

BEVERAGE DISTRIBUTORS COMPANY, LLC,

    Defendant.

---

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant Beverage Distributors Company, LLC's ("Defendant") Motion for Summary Judgment, filed on August 17, 2012. (Doc. # 27.) Pursuant to its Complaint (Doc. # 1), Plaintiff Equal Employment Opportunity Commission ("Plaintiff"), on behalf of Mike Sungaila, brings two claims for relief. Plaintiff alleges that Defendant discriminated against Mr. Sungaila in violation of the Americans with Disabilities Act ("ADA") by refusing to hire him as a Night Warehouse Associate because of his disability, its perception of him as disabled, or his record of disability. Additionally, Plaintiff alleges that Defendant violated Section 102(d) of the ADA by improperly requiring Mr. Sungaila to take a medical exam and utilizing the results of that exam to deny him employment. (Doc. # 49 at 2.) In the instant motion, Defendant requests that the Court grant summary judgment against Plaintiff on these two claims.

Plaintiff responded on September 17, 2012, and Defendant replied on October 10, 2012. (Doc. ## 36, 47.)

To establish a claim under the ADA, the plaintiff must show that he is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Defendant does not dispute that Mr. Sungaila is disabled and, for purposes of this motion at least, does not appear to dispute that Mr. Sungaila could perform the essential functions of the Night Warehouse Associate position. Defendant contends, however, that Mr. Sungaila could not perform the essential functions of that position safely due to his disability. Specifically, Defendant invokes the "direct threat" defense codified at 42 U.S.C. § 12113(b).

Section 12113(b) provides that "qualification standards may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." *Id.* (internal quotation marks omitted). An EEOC regulation, which is entitled to substantial deference,[1] defines **direct threat** as "a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r). It further provides:

> The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be

---

[1] *See Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007).

> based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:
>
> (1) The duration of the risk;
> (2) The nature and severity of the potential harm;
> (3) The likelihood that the potential harm will occur; and
> (4) The imminence of the potential harm.

*Id.* The employer bears the burden of proving the direct threat defense.[2] *See Jarvis v. Potter*, 500 F.3d 1113, 1122 (10th Cir. 2007).

To evaluate an employer's direct threat defense, the fact-finder does not independently assess whether it believes the employee posed a direct threat, nor does it accept the defense simply because the employer acted in good faith in deciding the employee posed such a threat. *Id.* Rather, "the fact-finder's role is to determine whether the employer's decision was objectively reasonable." *Id.* Although there does not appear to be any dispute as to whether Defendant maintained a good faith belief that Mr. Sungaila was a threat to himself, there are genuine issues of material fact as to whether Defendant's determination was objectively reasonable. For example, the severity of Mr. Sungaila's disability, the essential functions of the Night Warehouse Associate position, and whether any reasonable accommodations could have been

---

[2] The Tenth Circuit has recognized a narrow exception to this general rule: "[W]here the essential job duties necessarily implicate the safety of others, then the burden may be on the plaintiff to show that she can perform those functions without endangering others." *McKenzie v. Benton*, 388 F.3d 1342, 1354 (10th Cir. 2004) (brackets omitted). Here, Defendant only argues that Plaintiff was a threat to himself, not to others. Moreover, the essential duties of a warehouse worker do not "necessarily implicate the safety of others." *Id.* Thus, the burden-shifting exception does not apply in this case.

made for Mr. Sungaila are all very much in dispute.[3] As such, summary disposition is inappropriate in this case.

Accordingly, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 27) is DENIED.

DATED: December __07__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[3] In its Reply, Defendant accuses Plaintiff of distorting the factual record in order to create sham disputes of fact. The Court has carefully sifted through the evidentiary record and disagrees with Defendant's characterization of Plaintiff's Response. Although there are instances where Plaintiff has taken some liberties with the factual record, the same critique can be leveled at Defendant. For example, in its Motion, Defendant discussed the need for warehouse employees to move from one function to another. Citing deposition testimony from Robert H. Pieron, Plaintiff responded that there is always at least one employee working each job function. In its Reply, Defendant asserts that Mr. Pieron's deposition testimony "says no such thing." (Doc. # 47 at 4.) In his deposition, Mr. Pieron was asked the question: "and throughout the night shift, is there always at least one employee working each of the job functions in the warehouse?" Mr. Pieron responded "no." (Doc. # 36-16 at 81:8-11.) Standing alone, this certainly contradicts Plaintiff's response. But the Court is not so naive to believe that Defendant's omission of the remainder of Mr. Pieron's testimony was mere accident. Immediately after saying "no," Mr. Pieron clarified that he misunderstood the question, and testified that there is always someone loading the truck, always someone working in the mezzanine, always somebody working on the bottle line. (*Id.* at 81:12-22.) Thus, Mr. Pieron's deposition testimony supports Plaintiff's factual response, and it is Defendant that is guilty of playing fast and loose with the record evidence.