**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-02557-CMA-CBS

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                              Plaintiff,

v.

BEVERAGE DISTRIBUTORS COMPANY, LLC,

                              Defendant.

---

**PLAINTIFF EEOC'S MOTION FOR INJUNCTIVE RELIEF**

---

Plaintiff Equal Employment Opportunity Commission ("EEOC") hereby requests, pursuant to Federal Rule of Civil Procedure 59(e), that this Court amend the judgment against Defendant Beverage Distributors Company, LLC ("Beverage Distributors"), to include the following forms of equitable relief:

1)  Prejudgment interest on the backpay damages award,

2)  Reinstatement and/or Front Pay;

3)  A tax penalty offset, and

4)  Injunctive relief.

The specifics of the requested equitable relief are discussed more fully below and in the exhibits attached hereto. To the extent the Court determines it to be necessary, Plaintiff also requests that the Court hold an evidentiary hearing to determine the

appropriate amount of a tax penalty offset and obtain any additional information it

believes is necessary for calculating front pay.  Defendant opposes this motion.

## BACKGROUND

EEOC instituted this lawsuit in September 2011 alleging that Beverage

Distributors discriminated against Mike Sungaila, who is legally blind, by withdrawing its

conditional offer of employment to him to work in the warehouse. [Dkt. No. 1]. Among

the relief sought by EEOC was "a permanent injunction enjoining Defendant . . . from

discriminating against employees or applicants because of disability." *Id*. at p. 7 ¶A.

EEOC also sought an order that "Defendant institute and carry out policies, practices,

and programs which provide equal employment opportunity for qualified individuals with

disabilities." *Id*. at p. 7 ¶B.  Finally, EEOC sought an award of "back pay and benefits

with prejudgment interest" and "other affirmative relief necessary to eradicate the effects

of its unlawful employment practices, including, but not limited to, instatement or an

appropriate award of front pay." *Id*. at p. 7 ¶C.

The Court held a 5-day jury trial beginning on April 8, 2013. (Dkt. Nos. 86, 88, 90,

91, 93). At the conclusion of the trial, the jury found for the Plaintiff on its claim of

disparate treatment, awarding $29,543.25 in back pay.  (Dkt. No. 96, 98).

Among the evidence presented at trial was the testimony of John Johnson, the

Vice-President of Operations, who testified that he had never heard of the interactive

process required under the Americans with Disabilities Act.  Ms. Linda Hollman,

Defendant's former Vice-President of Human Resources, testified that she provides the

training to employees on the ADA and that in that training she does not discuss that

employees have the right to request reasonable accommodations. She further testified that she did not discuss that if an employee needed a job modification the employee could talk to someone in Human Resources.

Further, the Employee Handbook, which was introduced into evidence as Exhibit 8, does not contain any provision alerting employees or applicants that they can request accommodations or how to request accommodations. [Exhibit 1]. The handbook similarly does not contain any provisions discussing the interactive process. *Id.* Finally, Defendant's Handbook contains its EEO policy, which contains an inaccurate statement of the law with respect to the direct threat defense. *Id.* at p. 20.

## ARGUMENT

The Americans with Disabilities Act incorporates the enforcement provisions of Title VII of the Civil Rights Act. 42 U.S.C. § 12117(a). Title VII, in turn, provides:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include . . . back pay, or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1). "Congress' decision to incorporate in the ADA the remedies and procedures of Title VII is a clear indication . . . that the statutory requirement for injunctive relief should be applied in harmony in cases under the two acts." *Roe v Cheyenee Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997). In determining whether an act was intentional, "[i]t is enough to show that the practice was followed deliberately, not accidentally." *Id.* (citations omitted). Once it is shown that an

act was intentional, "[t]he court's discretion is to be exercised in light of the purposes of the statue on which plaintiff's suit is based" *Id.* (citations omitted).

Here, the jury found that Defendant intentionally discriminated against Mr. Sungaila on the basis of his disability. *See* Verdict (Dkt. No. 96). Consequently, the Court should award prejudgment interest, an offset for the tax penalty Mr. Sungaila will incur, reinstatement or frontpay, and injunctive relief.

### A. An award of prejudgment interest is justified and would serve the purposes of the ADA

"[P]rejudgment interest is an element of complete compensation in back pay awards." *Reed v. Mineta*, 438 F.3d 1063, 1066 (10th Cir. 2006) (quoting *Loeffler v Frank*, 486 U.S. 549, 558 (1988)). It is meant to "make victims of discrimination whole and compensate[] them for the true cost of money damages they incurred." *Id.* (citations omitted). "Courts commonly look to state statutory prejudgment interest provisions as guidelines for a reasonable rate." *Weber v. GE Group Life Ins. Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008) (citing *Allison v. Bank One*, 289 F.3d 1223, 1244 (10th Cir. 2002). Thus, in *Weber* the Tenth Circuit upheld an award of 15% interest based on an Oklahoma statute. *Id.* at 1017. Likewise, in *Allison* the Tenth Circuit upheld an award of 8% interest based on Colorado law. *Allison*, 289 F.3d at 1244.

Whatever the interest rate used, however, the Court must determine the interest on the damages as they accrue, rather than as a single lump sum. *Reed*, 438 F.3d at 1067.  Here, the back pay amount set by the jury during the relevant back pay period is $29,543.25. (Dkt. No. 98). Using Colorado's prejudgment interest rate, and compounding monthly using the method recognized by the Tenth Circuit, the interest on

the jury's award amount is $14,471.63.  Colo.Rev.Stat. § 5-12-102.  The Colorado 8%

interest rate would serve to make Mr. Sungaila whole and was approved of by the Tenth

Circuit in *Allison,* 289 F.3d at 1244. Using the Treasury Yield rate of .59%, the interest is

$884.29.  The EEOC's calculations assume that the back pay accrued in equal amounts

monthly throughout the back pay period of 5 years. [Exhibit 2].

Plaintiff has separately moved to set aside the jury's verdict finding Mr. Sungaila

failed to mitigate his damages on the basis that Defendant failed to produce sufficient

evidence on this defense.  (Dkt. No. 104). Assuming *arguendo* that EEOC prevails on

that motion, EEOC proffers a spreadsheet (Exhibit 3) which takes into account

prejudgment interest at 8% annually and calculates the total loss to Mr. Sungaila,

including the prejudgment interest at 8%, as $200,305 (back pay of $132,347 plus

interest of $67,958), or using the Treasury Yield rate of .59% as $136,324.

### B. Mr. Sungaila is Entitled to Reinstatement or an Award of Front-Pay

Under the ADA, the Court can award reinstatement to make the aggrieved

employee whole. *Dilley v. SuperValu, Inc.*, 296 F.3d 958 (10th Cir. 2002).  An employee

is entitled to reinstatement regardless of whether the jury found that the employee had

failed to mitigate his damages. *Id.* at 967 (finding abuse of discretion by District Court

judge for refusing to reinstate employee because the employee had failed to adequately

mitigate his damages); *see also Hooker v. Victoria's Secret Stores, Inc.*, 281 F.3d 1278,

at *7 (5th Cir. 2001) (unpublished) (District Court entitled to make its own factual

determination regarding whether plaintiff sufficiently mitigated damages to entitle her to

prospective relief entirely separate from the jury finding of mitigation related to past

damages).  Front pay may be awarded in lieu of reinstatement.  *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 638 (10th Cir. 1988), *rev'd on other grounds, Hazen Paper v. Biggins,* 507 U.S. 604 (1992).

Here, EEOC requests that the Court either order that Defendant reinstate Mr. Sungaila, or award front pay.  EEOC has conferred with counsel but Beverage has yet to express its position regarding reinstatement or front pay.  It is possible that reinstatement would be impossible due to a lack of positions (EEOC certainly does not request that another employee lose his or her job in order to employ Mr. Sungaila) or there may be some other reason making reinstatement inappropriate.

Should the Court award reinstatement, Mr. Sungaila should be reinstated with retroactive seniority.  *EEOC v. Rockwell Intern. Corp.,* 23 F.Supp.2d 892 (N.D. Ill. 1998).  Based on the collective bargaining agreements in effect since Mr. Sungaila's termination, Mr. Sungaila should be reinstated earning $22.56 per hour, the rate he would now be earning after 5 years in the position. [Ex. 4; Trial Exhibits 24 and 25].  In addition, EEOC requests that Mr. Sungaila be awarded front pay damages from the date of the verdict until the reinstatement actually incurs.  Plaintiff has been informed that Defendant intends to appeal the jury's verdict.  If that is the case, or if for any other reason Mr. Sungaila is not immediately reinstated, Mr. Sungaila should be entitled to payment for the continuation of his economic damages until he is reinstated.  *Pollard v. El Du Pont de Nemours & Co.,* 532 U.S. 843, 846 (2010) (front pay includes money awarded for lost compensation during the period between judgment and reinstatement).

In the alternative to requesting reinstatement, EEOC requests front pay. In *EEOC v. Prudential,* 763 F.2d 1166, 1171-72 (10th Cir. 1985)*,* the Tenth Circuit recognized that reinstatement is the preferred remedy, but held, "[r]einstatement may not be appropriate, however, when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." 763 F.2d at 1172. This concept was broadened in *Anderson,* where the Tenth Circuit described other situations in which reinstatement is not appropriate – for example, where the employer-employee relationship has been irreparably damaged by the animosity of the lawsuit or when no comparable positions are available with the employer. *Anderson,* 861 F.2d at 638; *see also Buonanno v. AT&T Broadband*, LLC, 313 F.Supp.2d 1069 (D. Colo. 2004) (presuming that front pay is more appropriate remedy).

1. **Calculation of Front Pay**

The Court can award such front pay (or "future damages") as will return the aggrieved party "as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct." *Prudential,* 763 F.2d at 1173. The factors relevant to assessing front pay are work life expectancy, salary and benefits at time of termination, potential salary increases through regular promotions and cost of living adjustments, the reasonable availability of other work opportunities, the period within which the employee may become re-employed with reasonable efforts, and methods to discount any award to net present value. *McInnis v. Fairfield Communities, Inc.,* 458 F.3d 1129, 1145 (10th Cir. 2006); *Davoll v. Webb*, 194 F.3d 1116 (D. Colo. 1999).

### i.    Work Life Expectancy

If the Court were to hold an evidentiary hearing to determine front pay, Mr. Sungaila will testify that he plans to work until normal retirement age, in the range of 65 years old. Mr. Sungaila is currently 32 years old, so his work life expectancy is another 33 years.

### ii.    Salary and Benefits at Time of Termination

Trial testimony established that Mr. Sungaila was earning $14.50 per hour (with no benefits) as a Drivers' Helper when he left Defendant's employ.   As a warehouse worker on the night shift, he would have been originally hired at $12 for a probationary period of 90 days and he would have been entitled to benefits.

### iii.    Potential Increases in Salary

The pay raises applicable to the warehouse workers are set out in the Collective Bargaining Agreements.  [Trial Exhibits 24 and 25].  Within a few months of being hired, or by October 1, 2008, he would have been earning $17.38 per hour.  Currently, he would be earning $22.56 per hour.  [Exhibit 4].

### iv.    Availability of Other Work Opportunities, and the Period Within Which Mr. Sungaila may become re-employed.

Given Mr. Sungaila's disability, his educational background, and the current economic condition of the U.S., there are very few other work opportunities for Mr. Sungaila that would match the warehouse job at Beverage Distributors  Mr. Sungaila is currently earning $10.40 per hour at Heritage Eagle Bend, where he does landscaping and yard maintenance.  Further, Mr. Sungaila has proved that he is not someone who changes jobs often.  He remained in his Driver's Helper job at Beverage Distributors for over 4 years, only leaving when he was terminated.  Similarly, he has remained in his

current job, which he continues to hold, for five years. Thus, EEOC believes that a front

pay award of up to 33 years (Mr. Sungaila's work life expentency) would be warranted.

*Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73 (3rd Cir. 2009) (affirming

front pay award of ten years); *Padilla v. Metro-N Commuter RR*, 92 F.3d 117 (2d Cir.

1996), *cert. denied,* 117 S.Ct. 2453 (1997) (front pay of about $500,000, which was

about 25 years front pay, held not excessive, noting that "this Court and other circuits

previously have affirmed awards of front pay for substantial periods of time when

necessary to provide whole relief for victims of employment discrimination"); *Hillman v.

U.S. Postal Serv.*, 2002 WL 598341 (D. Kan. 2002) (awarding 10 years of front pay);

*Thorton v. Kaplan,* 961 F.Supp. 1433 (D. Colo. 1996) (awarding 11 years of front pay).

Attached as Exhibit 5, the EEOC has attached front pay calculations for ten years.

The EEOC has submitted three different scenarios, each assuming a different amount

of mitigation earnings. Scenario 1 assumes that the Court finds that Mr. Sungaila did

not fail to mitigate his damages, either because the Court grants Plaintiff's Rule 50

motion or determines that Mr. Sungaila did not fail to mitigate for purposes of front pay.

[Exhibit 5 at p. 1]. For Scenario 1, Dr. LaJeunesse has assumed that Mr. Sungaila's

future earnings at his current employer will continue to grow at a rate of 1.455 percent

per annum, which is based on Mr. Sungaila's previous pay raises from 2009 to 2012.

Scenario 2 assumes that Mr. Sungaila could have earned $12.53 per hour since

his termination in 2008. This is based on Dr. Cook's testimony at trial that the mean

wage for a driver helper position was $12.53 in 2011. [Dkt. No. 104-1 at 50:2-8; 50:17-

21]. This was the only evidence presented at trial of any wage that Mr. Sungaila could

have earned greater than the wage he currently earns. [Dkt. No. 104 at p. 12]. Dr. LaJeunesse has included a .45% grown rate on this presumed mitigation income, which is based on the Bureau of Labor Statistics report regarding the average increases for transportation workers for the period from 2008 to 2012. [Exhibit 5 at p.2].

Finally, Scenario 3 presumes that the Court accepts the jury's findings regarding mitigation (i.e. at the time of his termination he could have earned $20.18 per hour) and carries that mitigation number into the future with raises at .45%. [Exhibit 5 at p. 3].

### v. Method to Reduce Requested Award to Present Value

Dr. LaJeunesse has reduced the amount of requested front pay to present value by calculating reductions on a monthly basis, using the discount rate that is the average of the market yield on U.S. Treasury securities, with interest compounded monthly.

### C. The Court Should Award A Tax Penalty Offset

The taxes on the damages the jury awarded for back pay, as well as any damages awarded by the court for front pay, will be paid during one tax year, which will cause Mr. Sungaila to be in a higher tax bracket for the year in which he receives the award, and thereby penalized by paying a higher tax rate. In order to make Mr. Sungaila whole, Plaintiff EEOC requests that the Court award an additional amount to offset the penalty Mr. Sungaila will have to pay in both State and Federal taxes.

The Tenth Circuit has approved the award of a tax penalty offset. In *Sears v. Atchison, Topeka, & Santa Fe Railway,* 749 F.2d 1451 (10th Cir. 1984), the Court upheld an award which included a tax component to compensate for the additional tax liability caused by a lump sum payment, noting that under the tax at that time, the employees

could only use income averaging over a three-year period, and the penalty was
significant. *Id.* at 1456-57. In doing so, the Court noted that "the trial court has wide
discretion in fashioning remedies to make victims of discrimination whole." *Id.* at 1456.
Since the Tenth Circuit decided *Sears*, the law has changed and income averaging has
been completely eliminated from the tax code, as of the Tax Reform Act of 1986, 26
U.S.C. §1305 (repealed 1986). Thus, Mr. Sungaila cannot spread the tax liability into
any year other than that in which he receives the lump sum payment.

Without knowing the exact amount that of damages that the Court awards
(whether the Court grants Plaintiff's Rule 50 motion on the mitigation finding and the
amount of front pay awarded by the Court), it is impossible to give the Court an exact
figure regarding the tax penalty Mr. Sungaila will incur. It is likely to be at least 10%, but
could also be significantly higher. Accordingly, the EEOC requests that this Court either
grant the tax penalty enhancement and then request briefing on the amount of the tax
penalty Mr. Sungaila will incur based on the Court's determinations, or hold an
evidentiary hearing where Dr. LaJeunesse could testify and calculate the tax penalty for
the Court. Regardless, however, the EEOC requests that the Court enhance the total
award to Mr. Sungaila to account for tax penalty to make Mr. Sungaila whole.

### D. The Requested Injunctive Relief is Justified and Would Serve the Purposes of the ADA

The court's discretion to award injunctive relief is "necessarily broad," but must
include consideration of whether "there exists some cognizable danger of recurrent
violation." *Roe v Cheyenee Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230
(10th Cir. 1997)(citations omitted). Here, there should be little doubt that there is a

11

cognizable danger of a recurrent violation, especially given Defendant's lack of
adequate ADA training for employees, including managers, and its steadfast belief that
it behaved appropriately when it refused to allow Mr. Sungaila to work, while
acknowledging that it had no idea what "legally blind" meant or what Mr. Sungaila could
or could not see.  Further, at trial, Mr. Tom Rogers could not identify a single individual
with a disability employed by Defendant and Defendant did not put on any evidence of
any disabled individual that it did employ.  Based on this evidence, this Court has broad
discretion to fashion injunctive relief that will serve the purposes of the ADA.

EEOC respectfully requests that this Court enter the Proposed Order regarding
Injunctive Relief, attached as Exhibit 6. This order includes provisions which (a) order
that Defendant regularly train its employees on the ADA, (b) order Defendant to adopt
more effective non-discrimination policies and procedures for employees to seek
reasonable accommodation, and (c) require that Beverage Distributors maintain records
and report to EEOC on the company's compliance with this Court's orders. EEOC has
limited the time frame for its proposed injunctive relief to five years which is a
reasonable amount of time to ensure against further violations of the ADA.

## 1.  Order Enjoining Defendant from Further Discrimination

Given the jury's verdict and Defendant's continuing insistence that it has
complied with the law, this Court should enter an injunction prohibiting Defendant from
engaging in further discrimination against persons with disabilities. Such an injunction
will impress upon Beverage Distributors the importance of following the law. *See e.g.,*
*E.E.O.C. v. Goodyear Aerospace Corp.*, 813 F.2d 1539 (9th Cir. 1987).

### 2. Order requiring Training for Employees

Training is an important way of preventing discrimination by teaching employees and managers how to report and respond to discrimination. Given the evidence at trial that Defendant's training on the ADA was inadequate in that it did not discuss accommodations under the ADA or the interactive process, training is an important form of injunctive relief in this case. Training should be provided to all new employees and to employees on at least an annual basis, and should include training on an established procedure for requesting reasonable accommodation and engaging in the interactive process. Additional training should be provided to managers and Human Resources personnel because these people are on the front lines of preventing discrimination and properly responding to requests for accommodation. Additionally, to ensure training is accurate and adequate, an outside trainer with experience in employment discrimination law should be chosen and appointed by the court.

### 3. Order requiring Revisions to Policies

A review of the Defendant's employee handbook, which was admitted as Trial Exhibit 8 and is attached to this motion as Exhibit 1, indicates that Beverage does not maintain any policies directed specifically at how employees should request accommodations under the ADA. Further, there are no provisions discussing the interactive process. In order to prevent further violations of the ADA, Defendant should be required to review and update its policies with the help of an outside consultant who has expertise in employment discrimination. At minimum, Defendant's policies should expressly prohibit discrimination based on disability, provide meaningful avenues for

requesting accommodations, describe the process employees should use to request reasonable accommodation, and assure that the company will engage in the interactive process in good faith. These updated policies should be redistributed to all employees.

In addition, the EEO policy contained in the handbook should be revised to reflect the correct legal standard for providing accommodations and the correct standard for assessing direct threat.  The EEO policy states that "The Company will make reasonable accommodations for qualified individuals with known disabilities, unless doing so would result in an undue hardship to the operation of our business, or create **the risk of harm** to the health or safety of the applicant, associate, or others." (Trial Exhibit 8 at p. 20).  The law provides, however, that there must be more than just "a risk."  There must be a significant risk of substantial harm which cannot be reduced or eliminated by reasonable accommodation.  Indeed, in this case, Defendant followed its own policy and used the "any risk" standard with Mr. Sungaila rather than the proper standard of significant risk of substantial harm which risk cannot be reduced or eliminated by reasonable accommodation.

Finally, Defendant should be required to revise all current job announcements and all future job announcements or postings to include a provision alerting applicants that the company will accommodate disabled applicants and that applicants should request reasonable accommodations necessary for the performance of the job.

### 4.  Order requiring Notice Posting

As with the requirements for training and policy revision, the purpose of a notice posting is to let employees at Beverage Distributors know that disability discrimination

will not be tolerated, that they have the right to request reasonable accommodation, and to inform them of available avenues to complain about any disability discrimination, including contact information for the EEOC and Colorado Civil Rights Division.

### 5.  Order Requiring Reporting and Compliance Review

Without provisions requiring reporting and oversight, the power of all other provisions are diminished. Defendant needs to know that compliance will be monitored. The easiest way to ensure compliance is for Defendant to report to EEOC about its implementation of the Court's Order. To the extent EEOC believes that Defendant is not complying with the Court's Orders, it should have to provide Defendant with notice and an opportunity to resolve non-compliance before involving the Court.

### CONCLUSION

The jury in this case determined that Beverage Distributors intentionally discriminated against Mike Sungaila because of his disability. Consequently, Mr. Sungiala is entitled to make-whole relief, including prejudgment interest on backpay, reinstatement or frontpay in lieu thereof, and a tax penalty offset. Further, there is a cognizable danger of recurrent violations, and this Court should award injunctive relief designed to prevent future violations of the ADA.

Dated: May 13, 2013

Respectfully submitted,

*/s Stephanie Struble*
Stephanie Struble
Equal Employment Opportunity Commission
Tel: 303-866-1381; Fax: 303-866-1375
**Stephanie.struble@eeoc.gov**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on May 13, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Joshua B. Kirkpatrick
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202.5835
Telephone: 303.362.2872
jkirkpatrick@littler.com

Scott A. Forman
Littler MENDELSON, P.C.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1500
Miami, FL 33131-1804
Telephone: 305.400.7511
sforeman@littler.com

_/s Stephanie Struble_____
Stephanie Struble