**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 11-cv-02557-CMA-CBS

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

     Plaintiff,

v.

BEVERAGE DISTRIBUTORS COMPANY, LLC,

     Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR INJUNCTIVE RELIEF**

---

     This matter is before the Court on Plaintiff Equal Employment Opportunity Commission's ("EEOC") Motion for Judgment as a Matter of Law on Defendant's Failure-to-Mitigate Defense (Doc. # 104) and Motion for Injunctive Relief (Doc. # 105). Both motions are ripe for the Court's review.

## I.  BACKGROUND

     EEOC brought this enforcement action against Defendant Beverage Distributors Company, LLC ("Beverage Distributors") on behalf of Mike Sungaila. EEOC alleged that Beverage Distributors discriminated against Mr. Sungaila in violation of the Americans with Disabilities Act ("ADA") when it withdrew its conditional offer of employment as a Night Warehouse Loader upon being informed that he is legally blind.

     This case was tried to a jury in April of 2013. On April 12, 2013, the jury returned its verdict by completing a special verdict form. The jury determined that EEOC proved

by a preponderance of the evidence that Beverage Distributors withdrew its conditional

offer of employment and/or denied employment to Mr. Sungaila because of his disability

and awarded back pay in the amount of $132,347.00.  However, the jury reduced that

award by $102,803.75 because it determined that Beverage Distributors proved by

a preponderance that Mr. Sungaila failed to make reasonable efforts to reduce his

damages for loss of back pay.  (Doc. # 96.)  The Court entered judgment on the verdict

on April 15, 2013, awarding $29,543.25 in damages.  (Doc. # 98.)

EEOC now moves for judgment as a matter of law alleging that there was

insufficient evidence for the jury to consider Beverage Distributor's failure-to-mitigate

defense and, therefore, the damage award should be reinstated to award the total back

pay amount.  In the alternative, EEOC asks this Court to consider the jury's award of

back pay as an advisory opinion and award back pay in its discretion.  (Doc. # 104.)

EEOC also moves for various forms of injunctive relief.  (Doc. # 105.)

## II.  THE ADA

At trial, the jury determined that EEOC proved that Beverage Distributors violated

the ADA by withdrawing its offer of employment because of Mr. Sungaila's disability.

Remedies for such a violation are those remedies available under Title VII of the Civil

Rights Act of 1964.  *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. §§ 2000e–4,

2000e–5, 2000e–6, 2000e–8, and 2000e–9); *Olds v. Alamo Group (KS), Inc.,* 889

F. Supp. 447, 449 (D. Kan. 1995).  Available remedies include, but are "not limited to,

reinstatement . . . , with or without back pay . . . , or any other equitable relief as the

court deems appropriate."  42 U.S.C. § 2000e–5(g) ("Interim earnings or amounts

earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."); *E.E.O.C. v. Sandia Corp.,* 639 F.2d 600, 627 (10th Cir. 1980).

## III. <u>FAILURE-TO-MITIGATE DEFENSE</u>

### A.     STANDARD OF REVIEW

A party may make a renewed motion for judgment as a matter of law within twenty-eight days of the entry of judgment. *See* Fed. R. Civ. P. 50(b).  A movant is entitled to judgment as a matter of law only if the evidence would not permit a reasonable jury to find in the non-movant's favor. *See Deters v. Equifax Credit Info. Servs.*, Inc., 202 F.3d 1262, 1268 (10th Cir. 2000); *see also Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999) (judgment as a matter of law "is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion") (internal quotations omitted).  Although the court must view the evidence in a light favorable to the non-movant, the court should not re-weigh the evidence, judge witness credibility, or challenge the factual conclusions of the jury. *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997), *overruled on other grounds by TW Telecom Holdings Inc., v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

### B.     DISCUSSION

EEOC first contends that the Court erred in allowing the jury to consider Beverage Distributor's failure-to-mitigate defense because there was insufficient evidence to show that (1) there were jobs available, and (2) there were substantially

comparable jobs.[1]  Because the Court agrees, it does not reach EEOC's alternative argument.

"The purpose of a back pay award is to make the employee whole—*i.e.,* restore the economic status quo that would have obtained but for the wrongdoing on the part of the employer . . . ."  *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1473 (10th Cir. 1993) (citing *Bowen v. United States Postal Serv.,* 459 U.S. 212, 222–23 (1983); *NLRB v. J.H. Rutter–Rex Mfg. Co.,* 396 U.S. 258, 263 (1969)). "The remedy of back pay does not constitute a windfall to plaintiff, nor does it award damages based on some amorphous inherent value of her constitutional right to equal protection."  *Cunico v. Pueblo Sch. Dist. No. 60*, 917 F.2d 431, 443-44 (10th Cir. 1990) (internal citations omitted).  Although no award can fully compensate a plaintiff for his personal right to equal protection once denied, the award of back pay corresponds most accurately to the injury suffered.  *Id.* (internal citation omitted).

---

[1]   Beverage Distributors argues that EEOC did not preserve its Rule 50 motion with regard to whether there was sufficient evidence that the alternative jobs were substantially similar. "As a general rule, a defendant's motion for directed verdict made at the close of the plaintiff's evidence is deemed waived if not renewed at the close of all the evidence; failure to renew that motion bars consideration of a later motion for judgment n.o.v."  *Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1455 (10th Cir. 1987) (citing cases); *see also* 9B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2536 (3d ed. 2013) ("It is thoroughly established that the sufficiency of the evidence is not reviewable on appeal unless a motion for judgment as a matter of law was made in the trial court. Indeed a motion at the close of plaintiff's case will not do unless it is renewed at the close of all the evidence.").  At the close of evidence, EEOC moved for judgment as a matter of law, arguing that "there has been absolutely nothing to show there was a single job available that Mr. Sungaila was qualified for and could have applied for." In ruling on this motion, the Court addressed both the availability of the positions and whether they were comparable.  Therefore, EEOC preserved this issue for review.  *See Davoll v. Webb*, 194 F.3d 1116, 1136 (10th Cir. 1999) (looking at counsel's argument and district court's ruling to determine if the court can infer a party adequately objected to and therefore preserved the issue).

Employees claiming entitlement to back pay and benefits are required to make reasonable efforts to mitigate damages.  *Sandia Corp.,* 639 F.2d at 627.  Once back pay and benefits have been awarded, the burden is on the employer to show that the claimant did not exercise reasonable diligence in mitigating his or her damages.  *Id.* To satisfy this burden, the employer must establish that: (1) there were suitable positions available which the claimant could have discovered and for which he or she was qualified, and (2) the claimant failed to use reasonable diligence in seeking such positions.  *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1990); *Sandia Corp.,* 639 F.2d at 627 (citing *United States v. Lee Way Motor Freight, Inc.,* 625 F.2d 918, 937 (10th Cir. 1979)); *see also Whatley v. Skaggs Companies, Inc.,* 707 F.2d 1129, 1138 (10th Cir. 1983), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983); *Eslinger v. U.S. Cent. Credit Union*, 866 F. Supp. 491, 499 (D. Kan. 1994).  Plaintiff must make only reasonable, good faith efforts to mitigate damages and is not held to the highest standards of diligence.  *Lee Way Motor Freight,* 625 F.2d at 937.

Mr. Sungaila began working as a landscaper approximately one week after having his offer rescinded by Beverage Distributors.  Beverage Distributors argued at trial that Mr. Sungaila failed to mitigate his damages by not pursuing another position with similar pay to the Night Warehouse Loader position with its company.  EEOC contends, however, that Beverage Distributors did not present sufficient evidence to permit the jury to reduce back pay by $102,803.75.  (Doc. # 104, at 3.)  In response, Beverage Distributors points to evidence elicited from its expert, Dr. Robin Cook, and

in particular, her testimony regarding the Bureau of Labor Statistics ("BLS") statistics that there are 10,000 warehouse positions.  (Doc. # 110, at 6.)

Dr. Cook's expert testimony focused on her opinion that Mr. Sungaila could not perform the essential job functions of the Night Warehouse Loader position.[2] With regard to the mitigation of damages issue, Dr. Cook opined that:

- Mr. Sungaila's earning potential was not diminished;

- in the Denver/Aurora area, people holding driver helper positions earned a mean wage of $12.53 per hour, which was similar to the compensation Mr. Sungaila earned as a Driver's Helper[3];

- based on Mr. Sungaila's job history and experience, it was reasonable to conclude he could have earned the mean wage;

- according to BLS, approximately 34 percent of unskilled workers would find work within 5 weeks of job separation and 68 percent would be employed after 14 weeks;

- the unemployment rate in the Denver/Parker area is lower than the national average and the average for the State of Colorado;

- according to BLS there were approximately 10,000 storage-laborer and driver-helper jobs[4] but most of those positions require the worker to drive a forklift, which Mr. Sungaila cannot do;

- assuming he was capable of the work, Mr. Sungaila could have found another warehouse position 9 months after his separation from Beverage Distributors;

---

[2]  The jury found that Mr. Sungaila could perform the essential functions of this position.

[3]  Mr. Sungaila held a Driver's Helper position before Beverage Distributors requested that he apply for the Night Warehouse Loader position.  The Driver's Helper position was eliminated.

[4]  Although the parties dispute whether these positions were located in the Denver/Aurora Metropolitan Area or throughout the state of Colorado, Dr. Cook's testimony never defined the location of these positions.

- assuming that Mr. Sungaila found replacement employment making compensation comparable to what he would have earned as a Night Warehouse Loader, his lost wages would have been approximately $10,000;

- that she did not consider Mr. Sungaila's vision loss in her analysis of his wage loss;

- that she had not identified a single open position that Mr. Sungaila was qualified for.

The Court rejects Beverage Distributors' assertion that Dr. Cook's testimony provided sufficient evidence that Mr. Sungaila did not mitigate his damages because all that was required was evidence that there were positions in "existence."  (Doc. # 110 at 6.)  First, the only Tenth Circuit case that Beverage Distributors cites for this proposition is a non-binding order and judgment.  *Goodman v. Fort Howard Corp.*, 1994 U.S. App. LEXIS 17507 (10th Cir. July 18, 1994) (order and judgment).  Yet, in that same case, and indeed in all other cases this Court has found on the issue, the Tenth Circuit routinely requires that employers prove not a position's existence, but its availability.[5]  To give vitality to the principle of making an employee whole through

_____

[5]   *See id.* (defendant not entitled to instruction stating that plaintiff's failure to seek full-time employment could constitute unreasonable diligence because it failed to produce any evidence indicating that suitable positions were **available** which plaintiff could have discovered and for which he was qualified); *see also McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000) (employer must show positions are available); *Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1175 (10th Cir. 2000) (court did not err in refusing to instruct the jury on mitigation where defendant offered no evidence that appropriate jobs were available to someone in plaintiff's condition with her educational and skill level, but instead merely presented the evidence she could return to sedentary light-duty or self-paced jobs); *Wilson v. Union Pac. R. Co.*, 56 F.3d 1226, 1232 (10th Cir. 1995) (plaintiff's general failure to seek employment for eighteen months before trial does not alone suffice to justify a mitigation instruction; the defendant must also show that appropriate jobs were available); *Aguinaga*, 993 F.2d at 1474 (district court did not abuse its discretion in refusing to allow defendant to interview class members regarding their attempts to mitigate damages where defendant asserted no evidence that suitable positions were available); *Spulak*, 894 F.2d at 1158 (employer must show positions

back pay, yet requiring that employee to take responsibility for ameliorating his

damages, an employer should present some evidence that positions were available and

could have been obtained by the employee.  Indeed, the Tenth Circuit and district courts

within this circuit have likewise concluded that availability of a position requires some

evidence that a plaintiff could obtain that position.[6]  Dr. Cook specifically testified that

she had not identified a single open position that Mr. Sungaila was qualified for.

Therefore, there is no evidence showing that these positions were available—*i.e.*, no

evidence that Mr. Sungaila could have obtained such a position so he could mitigate his

damages.  Dr. Cook testified only that the BLS states that warehouse and driver-helper

positions existed, but offered no testimony regarding how many of those positions were

currently occupied by other workers and, therefore, unavailable to Mr. Sungaila.

 Beverage Distributors points to no evidence that any of the positions Dr. Cook

testified to were accepting applications and instead asks the Court to conclude that it

was "reasonable for the jury to infer that some of those jobs had openings between

March 2008 and September 2009."  (Doc. # 110, at 7.)  This explanation points to

another flaw in the evidence presented: there was no testimony as to the timeframe

are available); *Sandia Corp.,* 639 F.2d at 627 (employer did not submit any evidence indicating
that other comparable positions were available to claimants).

[6]   *Compare McClure*, 228 F.3d at 1214  (district court erred in determining that plaintiff failed to
mitigate damages because defendant did not establish that positions were available to plaintiff
where she applied for positions within driving distance but received no offers); *Ross v. Unified
Sch. Dist. No. 231, Johnson Cnty., Kan.*, CIV. A. 91-2302-GTV, 1993 WL 62442 (D. Kan. Feb.
16, 1993) (defendant failed to show any likelihood that plaintiff could have obtained any of the
available positions and testimony that there were many applicants for those positions tended to
show plaintiff would not have been successful had he applied); *with Huffman*, 883 F. Supp. at
1477 (defendant proved positions were available by offering newspaper want ads for various
positions for which plaintiff was qualified).

in which the BLS stated that these positions existed.  *See Huffman v. Ace Elec. Co., Inc.*, 883 F. Supp. 1469, 1477 (D. Kan. 1995) (defendant did not prove plaintiff failed to mitigate damages prior to January 1993 because evidence of want ads during that timeframe consisted of positions unavailable to plaintiff).  Moreover, given the lack of testimony regarding the availability of these positions coupled with the lack of evidence that Mr. Sungaila would qualify for such positions or that they were comparable to the Night Warehouse Loader position, discussed *infra*, the Court finds that inferring that the positions were open during the applicable timeframe is not reasonable.  Instead, Beverage Distributors' reliance on Dr. Cook's vague testimony impermissibly requires the Court to employ cascading inferences in an attempt to support the jury verdict.  *See Brown v. Reardon*, 770 F.2d 896, 904 (10th Cir. 1985) (evidence cannot be "comprised of mere inference upon inference, such as would dictate a jury verdict based on pure speculation").  For these reasons, there was not sufficient evidence to allow the jury to consider Beverage Distributors' failure-to-mitigate defense.

Similarly, the Court finds inadequate Beverage Distributors' evidence that these warehouse jobs were suitable positions for which Mr. Sungaila was qualified.  *See Spulak*, 894 F.2d at 1158.  Despite Beverage Distributor's assertion to the contrary, courts regularly consider the salary, benefits, promotional opportunities, and commuting distance of available positions to determine whether they are suitable or substantially comparable to the position the discriminatee lost.[7]

---

[7]   *See, e.g., DerKevorkian v. Lionbridge Technologies, Inc.*, 316 F. App'x 727, 740 (10th Cir. 2008) (district court's decision to preclude jury from considering whether plaintiff failed to mitigate by refusing a less desirable job was not error, except that plaintiff's damage was the

The testimony at trial established that the Night Warehouse Loader position was full-time, paid $13.68-22.56[8] per hour, included benefits such as insurance, paid leave, and 401(k), and was within a reasonable commute from Mr. Sungaila's home.

Dr. Cook testified that in 2011, the mean salary for a driver helper position was $12.53 per hour in the Denver-Aurora Metropolitan area.  While Beverage Distributors contends that Dr. Cook testified that the 10,000 positions existed in the Denver/Aurora Metropolitan Area, the only testimony regarding that area was concerning the mean salary for warehouse positions, not the location of the 10,000 jobs.  Beverage Distributors never established the location of these positions at trial to show they were in commuting distance from Mr. Sungaila.[9]  Defense counsel asked Dr. Cook to **assume** that Mr. Sungaila's replacement employment would have paid a salary comparable to what he would have been paid by Beverage Distributors.  However,

---

loss of her green card, which the alternative position would have enabled her to obtain); *W. Trading Co., Inc.*, 291 F.R.D. at 620 ("Although the hourly rate was higher in the temporary position . . . the irregularity of hours, lack of benefits, and instability of the work makes the overall compensation not comparable."); *Eichenwald v. Krigel's, Inc.*, 908 F. Supp. 1531, 1568 (D. Kan. 1995) (defendants did not present any evidence that there were jobs with equivalent duties and pay available; *Ramirez v. Bravo's Holding Co., LLC*, CIV. A. 94-2396-GTV, 1995 WL 649952 (D. Kan. Oct. 5, 1995) (same); *see also Sellers v. Delgado Comm. College,* 839 F.2d 1132, 1138 (5th Cir.1988) ("Comparable employment . . . affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the claimant has been discriminatorily terminated.").

[8]  Testimony at trial established that Mr. Sungaila would have to undergo a probationary period for three months, during which he would make $12 per hour.  Thereafter, his wages would be determined by a collective bargaining agreement, which increases his wages as he gains seniority.  Therefore, had Mr. Sungaila remained in his position, at the time of trial, he would be earning $22.56 per hour.

[9]  Dr. Cook's Expert report states that these positions exist within the State of Colorado.  (Doc. # 60-2.)  However, because the report was not admitted at trial, the Court cannot rely on this fact to infer that these positions were located within Colorado rather than throughout the United States.

Beverage Distributors never submitted evidence of what the salary was for a

replacement position other than the mean salary, which was well below that paid by

Beverage Distributors.  Nor did it present evidence that any of these positions offered

benefits or were for full-time rather than part-time work.  *See Todaro v. Siegel Fenchel*

*& Peddy, P.C.,* 2009 WL 3150408, *4 (E.D.N.Y. Sept. 25, 2009) (failure to accept part-

time work in place of full-time did not cut off eligibility for back pay); *Apple Supermarkets*

*v. Local 338,* 1999 WL 596273, *4 (S.D.N.Y. Aug. 9, 1999) (part-time work is not

comparable to full-time even if the hourly rate of pay is the same).  Accordingly,

Beverage Distributors offered no evidence that a suitable position was available.

*See E.E.O.C. v. W. Trading Co., Inc.*, 291 F.R.D. 615, 620 (D. Colo. 2013) (granting

a Rule 50 motion because defendant failed to prove that a comparable position existed);

*see also Baty*, 172 F.3d at 1241 (non-movant entitled only to reasonable inferences).

Similarly, Defense counsel asked Dr. Cook to **assume** that Mr. Sungaila was

capable of performing the Night Warehouse Loader position but offered no evidence

of job duties and qualifications for those positions, other than that the majority of the

positions required a worker to drive a fork lift, which Mr. Sungaila could not do due to his

sight limitations.  Therefore, Beverage Distributors did not establish that Mr. Sungaila

was qualified for those positions.  *See Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170,

1175 (10th Cir. 2000) (defendant offered no evidence that appropriate jobs were

available for someone in plaintiff's condition or with her educational and skill level, but

instead merely presented the evidence she could return to sedentary light-duty or self-

paced jobs); *Volkman v. United Transp. Union*, 826 F. Supp. 1253, 1258 (D. Kan. 1993)

(a worker is not required to take anything other than substantially equivalent employment determined by a worker's skill, qualifications, age, and personal limitations); *cf. Huffman*, 883 F. Supp. at 1477 (defendant proved positions were available by offering newspaper want ads of various positions plaintiff was qualified, but limited the time frame in which plaintiff could not recover to after January 1993 because prior positions required skills plaintiff did not possess).

Accordingly, the Court concludes as a matter of law that Defendant failed to present evidence to support the jury's reduction of the back pay damages award. Because the jury determined the amount of back pay available to Plaintiff in the absence of mitigation to be $132,347.00, the Court finds that there is no need for a new trial on back pay damages. *See* Fed. R. Civ. P. 50(c) (if Court grants a renewed motion for judgment as a matter of law under Rule 50(b), it must then determine whether a new trial is necessary); (Doc. # 96 at 2).

## IV.   INJUNCTIVE RELIEF

EEOC also asks that this Court award (1) prejudgment interest on the back pay damages award, (2) reinstatement and/or front pay, (3) a tax penalty offset, and (4) injunctive relief.  (Doc. # 105.)

## A.   PRE-JUDGMENT INTEREST ON BACK PAY AWARD

The award of pre-judgment interest "rests firmly within the sound discretion of the trial court." *Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1287 (10th Cir. 2002); *see also Zuchel v. City and County of Denver,* 997 F.2d 730, 746 (10th Cir. 1993).  "A two-step analysis governs the determination of such an award."

*Caldwell,* 287 F.3d at 1286.  In exercising its discretion, "[t]he district court must first determine whether the award of pre-judgment interest will serve to compensate the injured party. Second, even if the award of pre-judgment interest is compensatory in nature, the district court must still determine whether the equities would preclude the award of pre-judgment interest." *Id.*

The Court finds that awarding pre-judgment interest is compensatory rather than punitive.  "The rule in this circuit is that pre-judgment interest is generally available to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment." *Id.* (internal quotation omitted). An award of pre-judgment interest places Mr. Sungaila in the position he would have been in and compensates him for the time that he has been denied the income he would have earned but for his wrongful termination.  *See Reed v. Mineta*, 438 F.3d 1063, 1066 (10th Cir. 2006) ("prejudgment interest helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred").

The Court rejects Beverage Distributors' assertion that pre-judgment interest would be a "windfall" to Mr. Sungaila because he received social security disability insurance ("SSDI") benefits after his separation from Beverage Distributors.  "The collateral source rule allows a plaintiff to seek full recovery from a tortfeasor even though an independent source has compensated the plaintiff in full or in part for the loss." *Green v. Denver & Rio Grande Western RR Co.*, 59 F.3d 1029, 1032 (10th Cir. 1995).  Thus, the Court disagrees that it should deny pre-judgment interest on this

basis.  That result would constitute a windfall to a defendant, who would benefit from the

availability of a plaintiff's income from a collateral source.[10]

The Tenth Circuit "has adopted a preference, if not a presumption, for pre-

judgment interest."  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219,

1236 (10th Cir. 2000); *FDIC v. UMIC, Inc.*, 136 F.3d 1375, 1388 (10th Cir.),

("prejudgment interest should normally be awarded on successful federal claims"), *cert.*

*denied*, 525 U.S. 962, 119 S. Ct. 404, 142 L. Ed. 2d 328 (1998).  Following this

presumption, the Court finds that an award of pre-judgment interest is compensatory

and would not be inequitable.

Further, pursuant to the Tenth Circuit in *Caldwell,* the calculation of prejudgment

interest is within the court's discretion.  287 F.3d at 1287–88; *see also Guides, Ltd. v.*

*Yarmouth Group Prop. Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002); *Kleier*

*Advertising, Inc. v. Premier Pontiac, Inc.,* 921 F.2d 1036, 1042 n. 4 (10th Cir. 1991)

("Because there is no federal statutory interest rate on pre-judgment interest, the rate

imposed will be left to the trial court's discretion.")  Colorado law also provides for an

---

[10]    *See Sandia Corp.*, 639 F.2d at 625 (finding it "unfair" to give the employer the benefit of
another collateral source, unemployment compensation); *see also Thurman v. Yellow Freight
Systems, Inc.,* 90 F.3d 1160 (6th Cir. 1996) (unemployment benefits were collateral source
benefits, and thus should not have been deducted from the jury's award of back pay for
discrimination); *Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994) ("Because the
victim rather than the perpetrator of discrimination should profit, courts that have considered this
question have held that pension payments from a collateral source are not to be deducted from
an Age Discrimination in Employment Act award."); *Doyne v. Union Elec. Co.,* 953 F.2d 447,
451-52 (8th Cir. 1992) (collateral source payments should not have been deducted from jury
verdict in discrimination case); *EEOC v. O'Grady,* 857 F.2d 383, 389 (7th Cir. 1988) (affirming
the district court's refusal to offset pension benefits from an age discrimination award);
*Structural Metals, Inc. v. S & C Elec. Co.*, SA-09-CV-984-XR, 2013 WL 870084 (W.D. Tex.
Mar. 7, 2013) (declining to take into account collateral source payments when calculating
prejudgment interest).

award of prejudgment interest to the prevailing party.  Where the action does not involve personal injury, the interest calculation is governed by Colo. Rev. Stat. § 5–12–102(1)(b), pursuant to which the interest rate is set at eight percent per annum compounded annually "after [the moneys] are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs."

In its discretion, the Court will award interest consistent with Colorado's pre-judgment interest rate of 8%.  *See Allison v. Bank One-Denver*, 289 F.3d 1223, 1244 (10th Cir. 2002) (affirming an 8% rate for pre-judgment interest); *Caldwell*, 287 F.3d at 1287-88 (same); *Pavicich v. Aetna Life Ins. Co.*, No. 09-CV-00818-CMA-KMT, 2010 WL 3854733 (D. Colo. Sept. 27, 2010).  While Beverage Distributors points out that interest rates have been at historic lows during this timeframe, had Mr. Sungaila not been released from his position, he could have invested and garnered a rate of return much higher than the 0.49% rate Beverage Distributors advocates for.  Accordingly, the Court will set a pre-judgment interest rate of 8% per annum, compounded annually, to apply to the back pay award of $132,347.  *See Reed*, 438 F.3d at 1067; (Doc. # 105-3).[11]

---

[11]   The Court rejects Beverage Distributors' argument that pre-judgment interest should not accrue for more than six months prior to the lawsuit filing date because the EEOC took an "unreasonable length of time . . . to complete its investigation . . . ." (Doc. # 111 at 3.)  "As a general rule, district courts should calculate interest on back pay and past damages based on the date of the adverse employment action."  *Reed*, 438 F.3d at 1066 (citing *Thomas v. Texas Dep't of Crim. Justice*, 297 F.3d 361, 372 (5th Cir. 2002)).  Beverage Distributors cites to no authority stating that this Court should reduce an award where an agency's investigation takes longer than the time specified in its regulations.  Moreover, while 20 C.F.R. § 1614.108(e) states that EEOC should complete investigations within 180 days, that timeframe can be voluntarily extended.  Limiting pre-judgment interest based on an assessment of the reasonableness of the timeliness of an agency investigation would inappropriately punish a claimant and undermine the purpose of pre-judgment interest as a means of making a claimant whole.  *See Reed*, 438 F.3d at 1066.

**B.    REINSTATEMENT AND/OR FRONT PAY**

The central purpose of the ADA is to make the plaintiff whole—to restore the plaintiff to the economic position the employee would have occupied but for the wrongful discrimination of the employer. *Davoll v. Webb,* 194 F.3d 1116, 1143 (10th Cir. 1999); *see also Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1338 (11th Cir. 1999). Reinstatement is the preferred remedy under the ADA, but front pay in lieu of reinstatement may be appropriate where discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy. *Davoll,* 194 F.3d at 1143 n.19.  The district court may consider all evidence presented at trial in formulating the proper award. *See id.* at 1144 (citing *EEOC v. General Lines, Inc.,* 865 F.2d 1555, 1562 (10th Cir. 1989)).

Beverage Distributors opposes reinstatement because it believes that Mr. Sungaila's current position places him "in as good a financial position as he would be in a Night Warehouse Loader position" and allows him "better work hours than he would have working the night shift." (Doc. # 111, at 6.)  EEOC refutes these statements by arguing that Mr. Sungaila's income is not equivalent to the Night Warehouse Loader position and that working during the day further requires him to pay for daycare. (Doc. # 113, at 6) (also noting that Beverage Distributors' argument takes into account collateral source income).  Beverage Distributors offered no evidence at trial that Mr. Sungaila's current position is financially comparable to the Night Warehouse position and in fact, as discussed *supra*, trial testimony demonstrated the opposite. The Court is also leery of accepting counsel's arguments in lieu of evidence.  More to

the point, Beverage Distributors does not argue that its relationship with Mr. Sungaila would make reinstatement untenable.  *Cf. E.E.O.C. v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1172 (10th Cir. 1985) ("Reinstatement may not be appropriate, however, when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible.")  Indeed, at trial Beverage Distributors representatives routinely testified that they held Mr. Sungaila in high regard.  Thus, reinstatement is appropriate in this case and Beverage Distributors must reinstate Mr. Sungaila to the Night Warehouse Loader position with retroactive seniority.  This disposition best facilitates the remedial purposes of the ADA and is in accord with the jury's finding that Mr. Sungaila was able to perform the essential functions of the position with or without reasonable accommodations.  Because the Court orders reinstatement, it denies EEOC's request for front pay at this time.  *See Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 957 (10th Cir 1980) (trial court has discretion to reinstate employee rather than award front pay); *see further Dilley*, 296 F.3d at 968 (court need not analyze whether a claimant mitigated his damages when it orders reinstatement).

## C.   TAX PENALTY OFFSET

EEOC requests a tax penalty offset, arguing that the damages awarded will be paid during one tax year, subjecting Mr. Sungaila to a higher tax rate and, thus, a higher tax penalty.  Beverage Distributors argues that such an offset is inappropriate because this is a typical single plaintiff discrimination case.

District courts "ha[ve] wide discretion in fashioning remedies to make victims of discrimination whole." *Sears v. Atchison, Topeka & Santa Fe Ry., Co.,* 749 F.2d 1451, 1456 (10th Cir. 1984). In *Sears,* the Tenth Circuit stated that although "[a] tax component may not be appropriate in a typical Title VII case," *Sears* presented special circumstances, including the case's protracted nature and the tax regulations at the time. *Id.* Taken together, these circumstances would result in the class members being taxed at the highest rate. *Id.* Conversely, in *Blim v. Western Electric Co., Inc.,* the Tenth Circuit held that awarding a tax offset was inappropriate because at the time, tax laws contained five-year averaging provisions that would eliminate almost the entire tax penalty that would result from a lump sum payment. 731 F.2d 1473, 1480 (10th Cir 1984).

The Court is not persuaded by Beverage Distributors' argument that tax offsets are inappropriate in single plaintiff cases. *But see E.E.O.C. v. RadioShack Corp.,* No. 10-CV-02365-LTB-BNB, 2012 WL 6090283 (D. Colo. Dec. 6, 2012) (awarding a tax offset in a single plaintiff case). Instead, *Sears* and *Blim* emphasize the plaintiff's ability to reduce the tax penalty through income averaging provisions. Since those decisions, income averaging was eliminated from the tax code as of the Tax Reform Act of 1986, 26 U.S.C. § 1305 (repealed 1986). Therefore, Mr. Sungaila would be unable to allot his damages award over a multiple-year period for tax purposes. The result is that Mr. Sungaila will be placed into a higher tax bracket. A tax offset would simply restore Mr. Sungaila to the position he would have been but for his wrongful separation from

Beverage Distributors.  To determine the tax consequences, however, a hearing is necessary.

**D.    INJUNCTIVE RELIEF**

Finally, EEOC asks for injunctive relief in the form of an order permanently enjoining Beverage Distributors from further discrimination, and requiring training for employees, revisions to its policies, updates to its job postings, notice posting, and reporting and compliance review.

As a threshold matter, the Court disagrees with Beverage Distributors' assertion that EEOC waived its request for injunctive relief by failing to include it in the Final Pretrial Order.  In the order, EEOC stated that it "seeks reinstatement and front pay and **other equitable relief** due to Defendant's discriminatory conduct."  (Doc. # 49 at 4) (emphasis added).  Section 2000e-5 of Title VII, which has been incorporated into the ADA, discusses the equitable relief available to victims of discrimination, including an injunction.  42 U.S.C. § 2000e-5(g).  Therefore, EEOC has not waived its right to request the injunctive relief at issue here.

"[T]he purpose of injunctive relief is to prevent future violations."  *E.E.O.C. v. General Lines, Inc.,* 865 F.2d 1555, 1565 (10th Cir. 1989) (citing *United States v. W.T. Grant Co.,* 345 U.S. 629 (1953)).  "The likelihood of future violations is inferred from the totality of the circumstances, including the commission of past illegal conduct."  *Id.* To obtain such relief, "the moving party must demonstrate that there exists some cognizable danger of recurrent violations, something more than a mere possibility, which serves to keep the case alive."  *Id.* (citing *W.T. Grant Co.,* 345 U.S. 629).

"A court has considerable discretion in fashioning an appropriate equitable remedy based upon the particular facts of a case, may rely on all the evidence adduced at trial and draw all reasonable inferences from that evidence." *E.E.O.C. v. Wal-Mart Stores, Inc.*, 11 F. Supp. 2d 1313, 1330 (D.N.M.) *aff'd*, 202 F.3d 281 (10th Cir. 1999) (internal citations and quotations omitted); *see also Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1231 (10th Cir. 1997).

At trial, the testimony of Beverage Distributors managers and human resources professionals demonstrated a lack of sufficient knowledge about the ADA, its interactive process, and the requirement that reasonable accommodations be provided to employees.  Moreover, Beverage Distributors' Employee Handbook contains an inaccurate statement of the law: it states that Beverage Distributors will provide reasonable accommodations, "unless doing so would result in an undue hardship . . . or create the risk of harm to the health or safety of the applicant, associate, or others." (Doc. # 105-1, at 4); *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 569 (1999) ("direct threat" is defined as "a **significant risk** to the health or safety of others that cannot be eliminated by reasonable accommodation") (citing 42 U.S.C. § 12111(3) (emphasis added)).  The handbook is also unclear on Beverage Distributor's policies regarding how an employee should request accommodations under the ADA.

Beverage Distributors fails to address EEOC's specific arguments regarding whether injunctive relief is appropriate and instead objects to the relief requested because EEOC offers no evidence of similar treatment of other employees.  However, injunctive relief is not limited to cases in which there is a pattern or practice of

discrimination.  *See, e.g., EEOC v. Wal-Mart Stores, Inc.*, 202 F.3d 281 (10th Cir. 1999)

(affirming district court's grant of injunctive relief in a single plaintiff case).  Instead, the

apt inquiry is not whether EEOC proved that other employees have been discriminated

against; it is whether the evidence presented at trial demonstrates a danger of recurrent

violations.  *See id.*  Therefore, Beverage Distributors' legal arguments do not satisfy the

Court's concern that without specific training on the ADA, a similar incident will be

repeated.

The jury verdict and testimony exposing a lack of adequate ADA training

establishes that Beverage Distributors intended to do the act which had the

discriminatory effect and there is a cognizable danger of a recurrent violation.  *See*

*Walmart*, 11 F. Supp. 2d at 1330-31 (lack of adequate training creates a legitimate

concern that a similar incident will happen again).  Accordingly, the Court grants

EEOC's request for injunctive relief.[12]

## V.    CONCLUSION

Based on the foregoing, it is ORDERED that:

(1)    Plaintiff EEOC's Motion Pursuant to Fed. R. Civ. P. 50(b) for Judgment as a

Matter of Law on Defendant's Failure-to-Mitigate Defense (Doc. # 104) is

GRANTED IN PART and DENIED IN PART;

(2)    Plaintiff EEOC's Motion for Injunctive Relief (Doc. # 105) is GRANTED IN PART

and DENIED IN PART;

(3)    The jury's damages award of $29,543.25 for back pay is VACATED;

---

[12]   However, the Court does not see it necessary to permanently enjoin Beverage Distributors.

(4)    The Clerk shall enter judgment in favor of Plaintiffs in the amount of $132,347.00

for back pay, plus pre-judgment interest accruing at a rate of 8 percent per

annum compounded annually from March 31, 2008, the date of Mr. Sungalia's

separation from Beverage Distributors;

(5)    Mr. Sungaila shall be reinstated to the position of Night Warehouse Loader with

the same seniority he would have had if he had not been terminated;

(6)    The parties shall contact chambers to schedule a hearing on the determination

of an appropriate tax penalty offset;

(7)    Beverage Distributors shall engage an outside consultant to provide employee

training and assistance in revisions to its policies, updates to its job postings,

notice posting, and reporting and compliance review.  Beverage Distributors shall

report its compliance with this order to the Court within six months of this order.

DATED:  December   09  , 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge